And may it please the court. The district court made a specific finding in this case that defendant's conduct shocked the conscience. And after 42 pages of fact-finding, the court stated, quote, Based on the disturbing record presented at trial, even if plaintiff's rights were grounded in state law, as defendants appear to argue, The court would find that defendant's nearly complete failure to protect them as set forth above is so arbitrary and egregious as to shock the conscience. That finding puts this case in sharp contrast with Carston's, where the Minnesota district judge considered and then rejected application of the shock to the conscience standard and utilized strict scrutiny instead. And because the district court utilized the wrong standard, this court was required to review the facts of that case de novo. And that's what it did. This court stated that it had reviewed the record and that, in its view, the evidence of defendant's conduct did not shock the conscience. The difference between what the district courts did in Carston's and in this case requires different standards of appellate review that lead to different outcomes. And I believe the standard of appellate review is a game changer in this case. Why do you think conscience shockiness, if that's a word, is a factual finding? I would have thought that's a legal conclusion. I understand she made a series of subsidiary findings, but isn't the ultimate question of whether this quote shocks the conscience a legal issue? I think the question of what the standard is for shocking the conscience is a legal issue. The question of whether the evidence supports shocks the conscience is a fact issue. But the question of whether the record as a whole supports a shocking conscience determination is a mixed question of law and fact. And the Supreme Court in the Lake Ridge case, which was decided after we filed our brief in this case, said that the way to determine a mixed question of law and fact and whether it should be treated as a legal question or a factual question is to look at the court's analysis and to determine whether the basis for the determination was primarily factual or whether it was based on a legal analysis. That's what Lake Ridge said. And in this case, the determination by Judge Fleisig was clearly based on the notion on her detailed fact findings after 42 pages. And she didn't do a legal analysis of the conscience shocking standard. Therefore, it's a question of fact. It's entitled to deference under the clearly erroneous standard. And- Well, suppose we said she should have done a legal analysis of what is conscience shocking. Well- What would you say would be the proper legal analysis? I would say the proper legal analysis is that there are three possibilities of a conscience shocking analysis. One is mere negligence. And the courts are absolutely clear that that's never shocking conscience conduct. This is all based on the Lewis case. The second one is intent to harm, which this court talked about in Karsten's. And the third is an intermediate standard called deliberate indifference. Now, Judge Fleisig clearly wasn't talking about mere negligence here. We know that because she uses words throughout her opinion like unconstitutional punishment, lifetime punitive detention, sham, disturbing record. Those are not words about negligence. We also know that she didn't find an intent to harm because that's why she reversed herself. She read Karsten's opinion as saying that there had to be malice or sadism, and she didn't think it was there. So the only possible conclusion is that her determination of shocks the conscience was under a deliberate indifference standard. That's the only possibility. Counsel, if this court determines that the deliberate indifference standard is the applicable standard in this case, and we review whether it shocks the conscience de novo, tell me what evidence specifically supports finding in favor of the plaintiffs. Under a clearly erroneous standard, it's well settled that deference is to be given to the court's findings so long as they are plausible, even if you disagree with them. So that's sort of my first point, Your Honor. The shocking conscience finding here is not merely plausible. We believe it's overwhelming. I'll start with this. The Supreme Court has stated that civil commitment cannot serve as punishment, said that time after time, and that punishment is the exclusive province of the criminal justice system. And Justice Kennedy, in the Hendricks opinion, said, if civil commitment were to become a mechanism for retribution or general deterrence, our precedents would not suffice to validate it. Yet the sorts facilities do punish, and they operate as a prison, and not just because it's enclosed by a double razor wire fence and armed guards, or because its representatives have described it as a prison, and it's not just because no one ever gets out. It's a prison primarily because the defendants have purposely created insurmountable obstacles to release. The district court described that systematic disregard. Let me talk about the specifics. On the annual review, the evidence was, well, first of all, the purpose of a periodic review is to ensure that the person civilly committed is released as soon as he is no longer considered likely to recommit. And the district court found that it's nearly impossible to obtain release without a favorable annual review. But sorts uses annual reviewers who have no training or understanding of the standard for release under the statute. They use reviewers who refuse to recommend release for those no longer likely to recommit, even though the Missouri Supreme Court, in the Kauffman case back in 2007, said that those persons could no longer be held. The person's no longer likely to recommit. They're not dangerous, even if they have a continuing mental abnormality. The reviewers have misled the courts by failing to disclose that men that they were recommending for continued confinement had already passed the neighbor test. They misled the courts by failing to inform them of the reduced risk of the aged and infirm. They deceived the courts about the condition of men like Messrs. Perk and Morton, who were literally on their deathbeds when they petitioned for release and said that they were still SVPs. Counsel, did the district court find that those actions were the result of negligence, poor training, lack of funding, or did the district court find that they were deliberate? She made the finding, for the reasons I stated in response to Judge Collington's question, that it was deliberate indifference. She ruled out negligence by saying that these practices were a sham, that they were punitive in nature. That's not negligence. And she ruled out intent to harm. As I said, that's why she reversed herself, because she thought that Carson's required an intent to harm and she didn't think there was an intent to harm. To go on with their practices. Director authorization allows the plaintiffs to go directly to trial on their petition without having to go through a lot of intermediary steps like frivolity reviews and a preliminary hearing. That's specifically in the statute. But in the 17 years from the enactment of the statute to the time of trial, the director authorization was never given, not once. In fact, no petition for release ever even reached the director's desk. And that's because the defendants established this multi-tier, non-statutory prior approval requirements, which never allowed anybody to petition to get beyond the first step. These things never even got to the director. Then there's the release phase of treatment. SORTS established 11 steps within this release phase with no timelines for progression, no guidelines for the plaintiffs as to how to advance through those steps. They employ this release without discharge device, which, of course, does not involve release at all, because anybody who gets a release without discharge is thrown into the annex and stays there for years. The district court found that the release phase of treatment is a sham. That's a summary of the evidence which we believe supports deliberate indifference. Now, this is a class action, as I understand. Yes, sir. So what relief exactly are you seeking? You're not claiming all members of the class are entitled to release. No, we're not. So what liberty interest are you invoking and what relief are you seeking? All right. As far as the liberty interest, it is the interest that's described in the O'Connor, Fuchsia, and Jackson line of cases. Well, that would work for the people who you say are entitled to release, but what about people who are not? What we're asking for is injunctive and declaratory relief under Rule 23B, which talks about conduct applicable to the class as a whole. What we're asking for is that steps be taken to remedy the annual review, director authorization, and community reintegration practices that have been violated and that are unconstitutional. Counsel, don't you basically bring a procedural due process case to us? No, sir. This case has nothing to do with procedural due process. What is the basis, then? You're dealing with procedures that the state has erected here, and you're saying that you should win because they have been violated, or where are you with that? What procedural due process means is not that some procedures are involved, but that it's a matter of giving note. When somebody's rights are infringed under procedural due process, you have to give them notice and a hearing and a fair decision maker. We're not talking about anything like that here, Judge Beam. We're not asking for hearing rights or anything like that on these annual reviewers or on the director. I mean, if we did that for everybody in the class, the whole system would fall apart. Well, you seem to be, and whether you are or not would be a state court issue, wouldn't it? No, sir. We would have no question. This court ruled in Strutton v. Meade, which we've cited as the granddaddy of these cases, that the state law supports a claim of fundamental liberty interest. And in that case, they did so based on the very same statute, this SVP law that we're invoking. Is that a state statute? State statute. Yes, sir. The point is we don't have any right to a hearing connection with any of these things. There isn't any legal or administrative proceeding which attaches. Do we have a right to adjudicate a state due process issue? Absolutely. That's exactly what this court did in Strutton. And there's no issue about that. I don't think anybody's argued to the contrary. I should point out that the procedural due process cases that the defendants cite, Loudermill, Swartout, Reno v. Flores, Herrera, all involved issues regarding the right to hearing or notice. That's what those cases are about, hearing and notice. So what relief do you want here? We want this case to be sent back, to be remanded to the district court. Ultimately, what class-wide relief do you seek? The class-wide relief would be to give, to remedy the annual review, director authorization, and community integration deficiencies. But how? What relief? I mean, you can't just put out an order that says the state you should remedy. No, we would ask the court to appoint a master and monitor, which is often done in these cases, for the purpose of enforcing those constitutional protections. And that's done by the court. You want the district court to appoint a monitor who would basically oversee the state's SVP system? Yes, sir. If I may, I'd like to reserve the balance of my time. All right, you may, yes. Thank you. Very well, thank you. Mr. Devine, we'll hear from you. Good morning, and may it please the court. Joshua Devine, deputy solicitor for the state of Missouri, appearing on behalf of respondents. To get right to the heart of the matter, Karzgen's controls. Plaintiffs have not identified a fundamental liberty interest, and for each of the three findings the district court found were constitutionally problematic, this court determined that very similar factual findings did not shock the conscience. But I'd like to begin first by unpacking a little bit about what Karzgen's was getting to. Karzgen's determined that several procedural violations did not shock the conscience, and the reason is really quite simple. Substantive due process is the wrong vehicle to bring this kind of claim. Now, plaintiffs have acknowledged that a lot of the Missouri statutory requirements are not required by the federal constitution. They admit throughout their reply brief that Missouri law is, quote, more extensive than the federal constitution requires. The entire crux of their substantive due process argument is that if a state's statutory right exists, they can enforce that right through substantive due process. The problem with that argument is it has been repeatedly rejected by this court and the Supreme Court. Take this court's case decision in Mize v. Gunter, for example. There the court expressly rejected that argument. It said a state statute that creates a state substantive right does not create a federal substantive due process right. The Supreme Court said the same thing in Parrott v. Taylor and Albright v. Oliver and many other cases. That's a little violence to our jurisdiction, right? Absolutely. That is the critical reason why courts don't do this. It would drastically expand federal question jurisdiction. This court and other courts have repeatedly said that courts are hesitant to expand substantive due process. Under plaintiffs' rule, substantive due process would become the most capacious constitutional doctrine in existence. It would authorize suits in federal court every time a state substantive statute was violated. This court and the Supreme Court have repeatedly rejected that. Now, that isn't to say that state-created rights are irrelevant to the federal constitution. Only, as the Mize court said, that they are protected by procedural due process. And you're using Carson's to support that argument? I think this is—the Carson's doesn't quite say this immediately, but it does say that all these troubling procedural violations don't shock the conscience. And I think this is wise because substantive due process is really just the wrong vehicle to bring these claims. Had the plaintiffs in the district court in Minnesota brought those claims under procedural due process, under a statutory claim in state court, under the district court's findings, they would have prevailed. Counsel, under what circumstances, if any, would the continued confinement of a non-dangerous person by the state violate substantive due process? Are you saying that it could never be brought as a substantive claim? Well, I think there are two responses to that, Your Honor. And one is that liberty—we readily acknowledge that freedom from restraint is a very, very important—freedom is a very important liberty. In fact, it is the original core meaning of the due process clause. But Califano and many other cases have said that is protected by a procedural due process. So in response to your hypothetical, the situation you're looking at is a situation where the individual has not had the benefit of those procedures. So in the Fauci case, for example, the court said that the individual was, quote, entitled to constitutionally adequate procedures to establish the grounds for his confinement. So in the instance where a person was deemed and adjudicated to no longer meet the statutory requirements for commitment, they would have to be conditionally discharged. But that is not what's happened here. Apart from a handful of individuals, every single person here has been adjudicated by—unanimously by a jury or in a handful of cases by a judge—to be a sexually violent predator. They are legally sexually violent predators. They are not entitled to— I'm not talking about their original adjudication. I'm talking about circumstances where they no longer meet the criteria for confinement. And my response is that the vast majority of these individuals, there has never been any legal adjudication that they no longer meet those requirements. That is what the procedures are for. That is why there is a process for them to ask to be released, for them to submit a petition for release. Now, their assertion is basically that the processes, the procedures, the statutes for release aren't being instituted properly. That is a statutory argument. That is a procedural due process argument, not a substantive due process argument. What do you mean? How would the argument go if the state were refusing to implement the procedures? How would the constitutional argument go? Well, first of all, they would bring a procedural due process argument. They would state that under Kansas v. Hendricks, the state, as applied, is not operating the constitutionally required procedures necessary to get people released when they no longer meet the statutory requirements for confinement or for commitment. Under this court's jurisprudence, they would have to bring that in state court unless they could prove that there was an inadequate remedy at state court, which they have never alleged here. So in state court, they would go to the state court and say, look, there are all these Missouri statutes that require community reintegration, and they're not following those statutes. They would present the same evidence that they presented in this case in state court, and if the state court believed them and determined that the program was not actually following these statutes, then they would be entitled to relief under the state statutes. Essentially, the problem here is they brought this in the wrong court, under the wrong vehicle. Unless they allege that the state goes through the motions with the procedures but just never releases the person, even though the person should be released or meets the criteria. And that's exactly what they have alleged here, essentially. And if they allege that in state court, they have alleged statutory violations here in federal court and said that these statutory violations are substantive due process violations. If they had brought that in state court and said, look, the program is violating state law, then they could have received the relief they were seeking in state court under state statutes. This is nothing more than an attempt to radically broaden federal question jurisdiction. A violation of a state statute is not a violation of substantive due process. So to move on to the specifics about Karjans. Suppose they were able to establish that the state was holding someone who met the criteria for release. Would that raise a federal question? If there is an adjudication that those persons no longer meet the statutory requirements for commitment, then you would look at the Fauci case. And the Fauci case would say that that person is entitled, quote, entitled to constitutionally adequate procedures. You're saying if the state court adjudicates in favor of the person, the state still refuses to release him. Right, right. But if the state adjudicates or never makes an adjudication, then you say there's no federal question? Correct. Because those individuals are legally, as in Herrera against Collins, those individuals legally meet the statutory requirements. And I think the court put the finger right on the issue earlier. This is a class action. They brought this under 23b2. There are a couple people who the district court determined no longer meet the statutory requirements, and the district court said that those people have to be released. But in a 23b2 class action, the court cannot issue the same, the court has to issue the same injunction for every single individual. Now, I'd also like to point out that their assertion that they're not seeking the release of all these individuals is completely contradicted by the record. Their complaint, the second paragraph of their complaint, and also their very first request for relief on page 208 of the joint appendix, expressly asked the district court to, quote, dismantle and close down sorts and order the immediate discharge of all sorts residents. The relief they asked from the district court, they didn't ask for supervision, but they also asked the district court, their primary request for relief was to put hundreds of exceptionally dangerous individuals on the streets of Missouri. Now, to get into the specifics about Karstjens and why Karstjens completely controls. Counsel, let me ask you about that. You said that Karstjens controls. Are you also saying that that controls the applicable test for what shocks the conscience in this case? Yes, I think there are two responses there. My question, then, is why shouldn't this court follow the older decisions of Terrell versus Larson or Neal, both of which predate Karstjens by a number of years? Well, I think this court has to follow Moran, which this court cited. But to the extent they've cited older cases, not a single one of those older cases actually found a substantive due process violation. So to the extent they misquoted the test as disjunctive instead of conjunctive, that was dicta because the imprecise statement of the test was not indicative of the actual result in that case. It is a conjunctive standard, as Moran said, as this court in Karstjens said, and, in fact, as Footnote 8 said in Lewis. Now, they didn't spend any time in their argument arguing that there's a fundamental liberty interest. In fact, in Karstjens, this court expressly said there was not a fundamental liberty interest. The district court found the same thing on page 51. There simply is no fundamental liberty interest. Their liberty interest is important but is protected by a procedural due process. It is not a substantive due process fundamental liberty interest. Now, as for the shocks of conscience standard. Is it your position that this is a rapidly evolving fluid situation? Yes. There have been substantial changes also to the program. The district court expressly found that on pages 19 and 20 of the opinion. A lot of the problems that the district court is discussing are problems that exist before 2010. The district court said once the state got additional funding, a lot of these problems went away. So as for this shocks of conscience standard, we disagree that the district court found a deliberate indifference standard. In fact, I think the page 57 of the addendum says the opposite. The district court said that it found that the conduct shocked the conscience under the, quote, standard advocated by defendants. We advocated the proof of intent to harm standard. Because under this court's jurisprudence, under Truon, the 2016 case, and many other cases, quote, proof of intent to harm is usually required. That's at page 631 of Truon. So proof of intent to harm is the default standard for the shocks of conscience standard. And we think that's what the district court found. Indeed, on remand, the district court said, even though this court arguably applied the proof of intent to harm standard, the court said under the proof of intent to harm standard, it would still find that this shocks the conscience. But it believed itself to be foreclosed by Karjins. It correctly believed itself to be foreclosed by Karjins. So that's the standard that the district court applied. And Karjins controls here. Do you think Karjins was wrong insofar as it used an intent to harm standard rather than deliberate indifference, given that this is not a car chase but rather, you know, an administrative? No, Your Honor. In fact, the Karjins opinion said it was neither malicious, sadistic, nor egregious. And egregious is the term that Lewis uses for the deliberate indifference standard. Now, perhaps the court didn't mean it that way. And in that case, I'd cite multiple. Lewis says. When you say that, do you mean to say you think deliberate indifference is the right standard? And the Karjins panel, you know, found that neither was met but that we should here be using deliberate indifference? No. Proof of intent to harm is the correct standard. I do believe Karjins said that it meant neither the deliberate indifference standard nor the malice or sadism standard. Now, the reason why proof of intent to harm is the correct standard is not only because Truon says it's the default standard but because Lewis says whenever there are competing obligations that tug against each other, proof of intent to harm is the correct standard. So you have situations like the Hunts against Sycamore School District case from the Sixth Circuit that we cited, where the court said intent to harm standard is the standard every time the government is acting, quote, for the benefit of the public. Here, this is a situation where. Which case was that? That is the Hunts against Sycamore case from the Sixth Circuit. Oh, Sixth Circuit case. Yeah. The Second Circuit has several cases that are on point as well. One, the Lombardi against Whitman case says that when great harm is likely to befall someone, no matter what a government official does, the proof of intent to harm standard is the correct standard. Here, we're talking about a situation where the Department of Mental Health essentially has two constituencies. This program is designed to. It has two intertwined goals, public safety and treatment. And every time a person who is likely to commit or has a substantial likelihood of committing is released, that is a direct harm to the community. Of course, you don't want to commit people unnecessarily because that also infringes on liberty interests, and the department recognizes that. So the department is stuck between the proverbial rock and a hard place. No matter what it does, there's going to be some infringement on liberty. And so this is the quintessential situation where proof of intent to harm is required. As for the Strutton test, in fact, this court said that in the SVP context, decisions made because of budgetary or staffing shortfalls, this is on page 558, do not evince shocking the conscience. And here, the district court expressly found that part of the problems that it found with the program were that the program wasn't receiving enough funds. Page 558 of what now? 558 of the Strutton case. Oh, Strutton again. Right. So you think the fact that she referred to funding is, what is the significance of that, that it wasn't the administrator's fault, it was the legislature's fault, so to speak? Yes, essentially, if they don't have the resources necessary to do what the district court is wanting them to do, that's not really, there's no intent to harm there. Neither is there recklessness to the extent of, or criminal recklessness as is required by deliberate indifference. So the district court made three findings that it determined were constitutionally problematic. Now, two of those really don't matter because they're not even required by the Constitution. So the first was that the individuals were doing the annual assessments using the wrong legal standard. So one, that parallels the exact same finding that the district court on page 1171-72 in Karzgin's found, and this court said that didn't shock the conscience. And no wonder. That statutory requirement is not even a federal constitutional requirement. The third one was the director's supposed abdication of his duty to, quote-unquote, fast-track these situations. Again, the Minnesota statute didn't have any similar avenue for, quote-unquote, fast-tracking, and this court said there was no constitutional problem with that. So those two constitutional findings, there's no constitutional requirement for either of those situations in the first place. So the district court's findings are not only irrelevant, but also closely parallel findings that this court said in Karzgin's did not shock the conscience. So the one remaining is the district court's determination that community reintegration efforts weren't adequate. Again, this court in Karzgin's said, with very similar findings from the district court there, that didn't shock the conscience. I'd like to push back on their assertion. It is unfortunate that the director hasn't endorsed any of these petitions, but the director's endorsement does almost nothing. So in the ordinary circumstance, a person who submits a petition goes through frivolity review. If they pass that, then they go to a probable cause hearing where they bear the burden. And after that situation, then the attorney general bears the burden of showing by clear and convincing evidence that they retain a mental abnormality and are still exceptionally dangerous. Now, when the director endorses a petition, the only thing that happens is that the person doesn't have to go through frivolity review. They still have to meet their probable cause hearing standard. They still have to establish probable cause at that hearing. Now, the district court initially interpreted the statute the other way, but at, I believe, docket entry 473, we asked the court to amend its opinion because it had got the statutory interpretation wrong, and it did so. In its amended opinion, it removed its analysis that had said that the director's endorsement got rid of the probable cause hearing. So the director's endorsement, at most, speeds things up a couple weeks. If a person can't pass frivolity review, they're not going to establish probable cause. So that does almost nothing. Going back to your procedural due process argument, are you basically, how are you squaring that with Karzgen's? Of course, Karzgen's didn't talk about that, and I don't think the state argued. No, Karzgen's doesn't express that. You're asking us to sort of recharacterize Karzgen's and say the reason there was no substantive due process violation was that it was a purely procedural due process claim? I think the doctrine supports that argument. Substantive due process is the wrong kind of vehicle to bring these kinds of claims. That's why when you see a slew of procedural violations in the district court, the district court in Karzgen's found 10 or 12 of them, this court looked at all those procedural violations and says, doesn't shock the conscience. I think procedural violations, ipso facto, cannot shock the conscience because substantive due process is the wrong vehicle to bring these kinds of claims in. Now, plaintiffs argued that this court should defer to the district court's findings. Again, I've explained why the district court did not find deliberate indifference, but the Village at Lake Ridge case that they cite from the Supreme Court, the Supreme Court says that courts, when faced with a mixed question of fact and law, should look at whether facts or law predominates. And here, we haven't argued that any of the factual findings are clearly erroneous. Here, it's simply a situation of applying the standard, applying the shock to the conscience standard to the facts that are already found. That's a purely legal question. All this court needs to do is review de novo whether that shocks the conscience, and this court already said that it doesn't in Karzgen's. So unless there are further questions, because substantive due process is the wrong vehicle to bring this claim, and separately because Karzgen's is on all fours with this case, this court should affirm. Thank you. Very well. Thank you for your argument. Judge Gross, in response to your question about Terrell v. Larson, that case specifically noted that deliberate indifference can be conscience shocking when actual deliberation is practical, which it clearly is here. And that's an en banc decision of this court. Of course, en banc decisions govern, and later panel rulings like Karzgen's have to give way to them. So Terrell is controlling on the deliberate indifference issue, and Karzgen's is not. I want to go back to the- I think Ed Shepard have cited Moran, which is also an en banc opinion. It is, but not on that issue, Your Honor. Well- Not on the deliberate indifference issue. On- I need to go back to this procedural due process issue. Even if there were some kind of procedural due process issue of notice or hearing lurking out there, substantive and procedural due process are not mutually exclusive theories. The existence of one does not preclude the assertion of the other on the same record. There's a case called Schmidt v. Des Moines Public School decided by, Your Honor, Judge Colleton, which considered both theories based on the same record. This is really just another version of the defendant's claim that the plaintiffs have no substantive due process claim. Whether they do or not is the issue, not whether procedural due process would have been a better theory for them. We've shown that they do. In addition to cases like O'Connor, Fuchsia, and Jackson, this court in Davis v. Hall approached similar claims of excessive confinement as a matter of substantive due process. So did Karstens. That opinion never suggests that there would have been a different outcome if plaintiffs had proceeded on a theory of procedural due process.  Let me say this. There's always a mix in these civil confinement cases between substance and procedure. The procedures are established to make sure that the substantive rights are not infringed. This case is about substantive rights with remedies in the area of procedure, and defendants have simply confused the two throughout this case. Now, this whole issue about fundamental rights. If O'Connor could not be more clear. It says, even if this involuntary confinement was initially permissible, it could not constitutionally continue after the basis for it no longer exists. And this is what I call the durational principle. These men are to be let out when they no longer meet the requirements for confinement that they had at the time of their original confinement. Jackson v. Indiana expressed the scope of the liberty interest in this way. The nature and duration of commitment must bear some reasonable relationship to the purpose for which the individual is committed. So look at it in Missouri. There is a total disconnect. The nature of the commitment is punitive. The duration is for life. But the purpose of the commitment is treatment and release when no longer likely to recommit. They fail the Jackson test, which is another way of stating the fundamental liberty interest. I see that I've run out of time. Thank you, Your Honor. Well, thank you for your argument. The case is submitted, and the court will file an opinion in due course. Thank you all for your attendance.